UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ODRECUS RYZAN CLEMENTS,

        Petitioner,                     CASE NO. 08-CV-14270

v.                                    JUDGE PAUL D. BORMAN
                                      UNITED STATES DISTRICT JUDGE
CAROL HOWES,

        Respondent.
_____/

**OPINION AND ORDER
(1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DECLINING TO
ISSUE A CERTIFICATE OF APPEALABILITY, (3) AND DENYING
AN APPLICATION FOR LEAVE TO PROCEED ON APPEAL *IN FORMA PAUPERIS*.**

## I.   INTRODUCTION

This is a habeas case filed by a state prisoner under 28 U.S.C. § 2254. Michigan prisoner Odrecus Ryzan Clements ("Petitioner") is currently incarcerated by the Michigan Department of Corrections at the Central Michigan Correctional Facility in St. Louis, Michigan. On October 7, 2008, he filed this *pro se* Habeas Petition challenging his 2006 conviction for unarmed robbery, MICH. COMP. LAWS § 750.530, following a jury trial in the Genesee County Circuit Court. He was sentenced on July 13, 2006, as a habitual offender, fourth offense, MICH. COMP. LAWS § 769.12, to nine years, six months to twenty-five years in prison for that conviction.

In his pleadings, Petitioner raises claims concerning his sentencing, the prosecutor's failure to provide discovery, the jury instructions, and the effectiveness of trial counsel. On February 14, 2011, Petitioner filed a Motion for Leave to Amend his Habeas Petition, along with an attached Memorandum of Law. In that Motion, he sought permission from the Court to amend his original Habeas Petition with respect to his sentencing claim, because the "issue was not fully briefed" in his

Reply Brief. He argued that he was entitled to resentencing because the "sentencing court failed to properly resolve the challenges to the accuracy of the information in the presentence report" with respect to the number of victims that were placed in danger. He did not seek to add new claims or parties. On September 23, 2011, the Court granted his Motion.

For the reasons set forth, the Court denies the Petition. The Court also declines to issue Petitioner a Certificate of Appealability and denies him an Application for Leave to Proceed On Appeal *In Forma Pauperis*.

## II. BACKGROUND

Petitioner's conviction arises because of an unarmed robbery which occurred at the Golden Gate Restaurant in Flint, Michigan, on November 12, 2005. Petitioner used force against employee Bonnie Elrod. The Michigan Court of Appeals provided a brief summary of the facts, which is presumed correct on habeas review. *See Monroe v. Smith*, 197 F.Supp.2d 753, 758 (E.D. Mich. 2001), *aff'd*, 41 F.App'x 730 (6th Cir. 2002) (citations omitted). The Court of Appeals stated:

> Defendant entered a restaurant and asked the cashier, Bonnie Elrod, for change for a dollar. When Elrod opened the register, defendant grabbed $20 bills and $50 bills and ran out the door. Elrod chased defendant to the parking lot, where he jumped in a truck driven by Lynette Woods. Elrod tried to grab the keys out of the ignition from the driver's side, but defendant pushed Woods aside, put the truck in gear, and sped off, injuring Elrod's knee.

*People v. Clements*, No. 271808, 2007 WL 3085476, at *1 (Mich.Ct.App. Oct. 23, 2007).

Additional trial testimony revealed the following pertinent facts.

Terry O'Hanisain, a customer who was at the restaurant at the time of the incident, testified that he saw a man lean over the counter near where Elrod was standing by the cash register. He did not think anything about the situation until he heard a waitress shouting. He said he then saw Elrod

chasing the man into the parking lot. He, along with several other individuals, followed them out. O'Hanisain testified that he turned to the others and told them he was going to call the police. However, when he discovered that someone else was already calling the police, he went back outside to the parking lot. O'Hanisain said Elrod was on the ground, "her head and body were right next to the wheel" of a truck. Trial Tr. vol. II, 21 June 7, 2006. The truck took off, hitting Elrod and knocking her away.

Gerald Long, another witness to the incident, testified that he was sitting in a booth with O'Hanisain, his back facing the door, when he heard a woman scream. He said he saw a heavy-set black man running out the door, with Elrod following him. Long said he followed Elrod. He saw the man get into a truck with a female driver. The female driver put the truck in reverse and Elrod was dragged across the parking lot. Long identified Petitioner in court as the perpetrator.

Detective Randy Kimes, a police detective for the Flint Township Police Department, testified that he participated in a corporeal six-man lineup in which Elrod identified Petitioner as the robber. Detective Kimes testified that Elrod said she was "[n]inety to a hundred percent" sure that the man identified as Petitioner in the lineup was the man who robbed her. Trial Tr. vol. II, 80 June 7, 2006.

Lynette Woods also testified. She said that, on the day in question, she was driving her mother's S-10 pickup truck. A man asked her to give him a ride. She knew the man as "Worm." She said they first stopped at his friend's house and then went and parked by a lake and smoked crack cocaine. Afterward, they went to a gas station and then to the Golden Gate restaurant. Woods said Worm got out of the truck, while she waited in truck.

3

Woods further testified that she then heard some loud "booms." Trial Tr. vol. II, 96 June 7, 2006. Worm was hitting the hood of the truck and yelling "go." *Id.* She said he jumped into the cab and started the ignition. He backed up, as she was hanging onto the door. They then sped away. He drove to another friend's house, where she stayed overnight. Worm drove away in the truck. At some point the next morning, she got away and called her husband. Woods's husband told her that the police were with him. The police then came and got her.

When the police arrived, they arrested Woods. She was charged with possession of cocaine and accessory-after-the-fact. She was given a plea and sent to drug court for testifying against Petitioner. She was released from jail seven days later. At some point, Woods met with the police. She was shown a photo lineup. Woods identified Petitioner as "Worm."

Mark Schmitzer, a police detective with the Flint Township Police Department, was present when Woods was brought in for the photo lineup. He testified that Woods identified Petitioner "[w]ithin a second." Trial Tr. vol. II, 146 June 7, 2006.

The prosecution rested. Petitioner did not testify.

The jury convicted Petitioner. He was sentenced to the prison term described above.

Following his conviction and sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals, alleging the following: (1) the trial court erred in denying his objections to the scoring of Offense Variable (OV) 9 at 10 points because the evidence did not support the finding that there were two to nine victims, and (2) trial counsel was ineffective for failing to object when the trial court required the jury to determine whether Woods was an accomplice before applying the instruction on accomplice testimony. In a *pro per* supplemental brief, Petitioner raised three additional issues: (1) the prosecutor committed misconduct by failing to turn over a photographic

lineup, using perjured testimony, and using an unduly suggestive identification process; (2) the trial judge erred in instructing the jury that there was some evidence that he ran away after the crime; and (3) trial counsel was ineffective for failing to object to Woods's testimony and in-court identification, failing to offer a photograph of Alex Williams, a man who looked like him, into evidence, and failing to object to the admission of evidence regarding Elrod's injuries.

The Court of Appeals denied relief on those claims and affirmed Petitioner's conviction. *Clements*, 2007 WL 3085476, at *1-8. Petitioner then filed an Application for Leave to Appeal with the Michigan Supreme Court, along with a Motion to Remand. Both were denied. *People v. Clements*, 480 Mich. 1136, 746 N.W.2d 87 (2008). His Motion for Reconsideration also was denied. *People v. Clements*, 481 Mich. 881, 748 N.W.2d 833 (2008).

Petitioner neither filed a Motion for Relief from Judgment with the state trial court nor a Petition for Writ of Certiorari with the United States Supreme Court. Rather, he filed this Habeas Petition, raising the same claims presented to the state courts on direct appeal. Respondent has filed an Answer, arguing that the Petition should be denied for lack of merit.

### III.    ANALYSIS

#### A.    Standard of Review

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified 28 U.S.C. § 2241 *et seq.*, govern this case because Petitioner filed this Petition after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' [the United States Supreme Court's] clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002) (same). "[T]he 'unreasonable application' prong of [the statute] permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *Williams*, 529 U.S. at 409.

Recently, in *Harrington v. Richter*, --- U.S. ---, 131 S.Ct. 770, 786-87 (2011), the United States Supreme Court held:

> A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision. *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule

6

application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Ibid.* "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." *Knowles v. Mirzayance*, 556 U.S. ----, ----, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

\* \* \*

Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332 n.5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Additionally, a state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, --- U.S. ---, 131 S.Ct. 1388, 1398 (2011).

With those standards in mind, the Court proceeds to address Petitioner's claims.

**B.    Petitioner's Claims**

**1.    Claim I– Improper Sentencing**

In his first habeas claim, Petitioner asserts that he is entitled to habeas relief because his sentence was based on an incorrect application of scoring under the State's sentencing guidelines. In his Motion to Amend, Petitioner claims that he is entitled to resentencing because the "sentencing court failed to properly resolve the challenges to the accuracy of the information in the presentence report" with respect to the number of victims that were placed in danger.

7

Claims which arise out of a state trial court's sentencing decision are not normally cognizable upon habeas review, unless the petitioner can show that the sentence imposed exceeded the statutory limits or is wholly unauthorized by law. *See Lucey v. Lavigne*, 185 F.Supp.2d 741, 745 (E.D. Mich. 2001). Petitioner's claim that the trial court erred in scoring OV 9 (number of victims) under the state sentencing guidelines is not cognizable on federal habeas review because it is basically a state law claim. *See Howard v. White*, 76 F.App'x 52, 53 (6th Cir. 2003) ("A state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only."); *McPhail v. Renico*, 412 F.Supp.2d 647, 656 (E.D. Mich. 2006). Habeas relief does not lie for perceived errors of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (state courts are the final arbiters of state law and the federal courts will not intervene in such matters) (citing *Estelle*; 502 U.S. at 67-68); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002) (same). Thus, any error in scoring the offense variables and determining the guideline range does not merit habeas relief.

Moreover, even if this claim were cognizable, Petitioner is not entitled to relief. The Court of Appeals determined that OV 9 was properly scored. It stated:

> There was sufficient evidence on the record that two to nine people were placed in danger by defendant's manner of leaving the parking lot. The testimony showed that defendant put the truck in gear. The truck went in reverse and dragged Elrod across the parking lot, injuring her knee. Then, the truck went forward and left Elrod on the ground. Some of the workers and customers had followed Elrod to the parking lot and helped her back into the building. Gerald Long, a customer in the restaurant at the time of the incident, testified that he followed Elrod to the parking lot and saw the robber's face from about eight to ten feet away.
>
> In addition, Woods testified that defendant jumped in the truck on the passenger's side, started the ignition, and nearly pushed Woods out of the truck. Defendant backed the truck up and took off, with Woods hanging partially out the door. The evidence shows that at least two people were in danger of getting hit by

> the truck when defendant threw the truck in reverse and then sped out of the parking lot to escape. The trial court did not err in assessing 10 points for OV 9.

*Clements*, 2007 WL 3085476, at *1. That decision is reasonable and is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.

The Court also finds that Petitioner is not entitled to relief on any claim that he was sentenced based upon inaccurate information. "It is undisputed that convicted defendants, [], have a due process right to a fair sentencing procedure." *United States v. Anders*, 899 F.2d 570, 575 (6th Cir. 1990). A sentence may violate federal due process if it is carelessly or deliberately pronounced on an extensive and materially false foundation which the defendant had no opportunity to correct. *Townsend v. Burke*, 334 U.S. 736, 741 (1948); *see also United States v. Tucker*, 404 U.S. 443, 447 (1972) (same); *United States v. Sammons*, 918 F.2d 592, 603 (6th Cir. 1990) (defendant must have meaningful opportunity to rebut contested information at sentencing). To prevail on such a claim, a petitioner must show that the trial judge relied on the allegedly false information. *See United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984); *Draughn v. Jabe*, 803 F.Supp. 70, 81 (E.D. Mich. 1992). In this case, Petitioner makes no such showing.

Rather, the state trial court considered the crime, the presentence report, and other permissible factors at sentencing. The trial court concluded that Petitioner endangered at least two people, as there were a number of bystanders standing around, unprotected, in the parking lot. Petitioner had an opportunity to contest the accuracy of the reports and the scoring of the guidelines. Petitioner has not shown that the trial court relied upon materially false or inaccurate information in imposing his sentence which he had no opportunity to correct. Furthermore, the Court of Appeals found that the record supported the trial court's determination. *Clements*, 2007 WL 3085476, at *1.

Accordingly, the Court concludes that habeas relief is not warranted with respect to Petitioner's sentencing claim.

### 2. Claim II– Prosecutorial Misconduct

Petitioner next argues that the prosecutor committed misconduct by failing to turn over a photographic lineup to the defense and thereby violated the discovery order. Petitioner relies on *Brady v. Maryland*, 373 U.S. 83 (1963), in support of his argument.

The Supreme Court explained in *Brady* that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. "There are three components of a true *Brady* violation: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

Here, Woods gave the police the name of "Worm," as the man she was with when the restaurant was robbed. The police ran that name through the proper booking records and received information and a photograph of Petitioner as the man believed to be "Worm." The detectives then conducted a six-photographic lineup with Woods, where she identified Petitioner as "Worm."

On February 9, 2006, defense counsel filed a demand for discovery. On February 15, 2006, the prosecutor responded to the discovery order, indicating that all requested materials had been provided and that the materials in the prosecutor's file were available to the defense for inspection.

On the first day of trial, defense counsel learned that the prosecutor had possession of the photographic lineup. Counsel objected to its admission on the ground that he was never provided

a copy of the lineup prior to trial. The prosecutor admitted that a mistake had been made and that it was not discovered until trial, because the case was reassigned from one detective to another and the final detective believed that a copy of the lineup had been provided to the defense but it was not. The trial judge concluded that it was not appropriate to declare a mistrial and that Petitioner did not suffer extreme prejudice by the error, because defense counsel was provided with an opportunity to talk with both officers, did not refer to it in his opening statements, and would have an opportunity to cross-examine both Woods and the detective in charge at trial.

In addressing this claim, the Court of Appeals found:

> The trial court properly balanced the interests of the parties in allowing admission of the photographic lineup. The circumstances of the case showed that the lineup was not turned over during discovery due to an inadvertent mistake by the detectives. At the time of the court's decision, neither Woods nor Schmitzer had testified, so both parties had the opportunity to examine the witnesses regarding the identification process. Despite knowing about the lineup for only one day, defense counsel was able to elicit contradictory testimony between the two witnesses regarding the photographs shown and use that testimony to attack the credibility of the identification in his closing argument. There is no indication that the failure to turn over the photographic lineup before trial was willful on the part of the prosecutor or that defendant was actually prejudiced by receiving the photographic lineup at trial.

*Clements*, 2007 WL 3085476, at *5 (citation omitted). This Court concludes that the Court of Appeals's decision is not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. Rather, the record reveals that the defense was not prejudiced by the trial court's denial of the motion for a mistrial. The prosecutor moved for admission of the photographic lineup through witness Woods. Defense counsel objected. The objection was sustained. The photographic lineup was subsequently admitted following the prosecutor's questioning of the detective and defense counsel's cross-examination of him. Thus, the Court concludes that Petitioner has failed

11

to demonstrate a reasonable probability that the outcome of his proceedings would have been different had the photographic lineup been disclosed earlier.

Accordingly, Petitioner is not entitled to habeas relief with respect to this claim.

### 3. Claim III– Improper Jury Instruction

Petitioner next argues that the trial judge erred in instructing the jury that there was some evidence that he ran away after the crime.

An erroneous jury instruction warrants habeas relief only where the instruction "'so infected the entire trial that the resulting conviction violates due process.'" *Estelle*, 502 U.S. at 72 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). "'[I]t must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned', but that it violated some [constitutional] right.'" *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974) (quoting *Cupp*, 414 U.S. at 146). A jury instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. *See Johnson v. Smith*, 219 F.Supp.2d 871, 882 (E.D. Mich. 2002).

The trial judge gave the following instruction:

> There's been some evidence that the Defendant ran away after the alleged crime he was accused of. The crime, the police arrested him–let me go back here. There's been some evidence that the Defendant ran away after the alleged crime he was accused of. The police tried to arrest him. This evidence does not prove guilt. A person may run or hide for innocent reasons, such as panic, mistake or fear. However, a person may run or hide because of a consciousness of guilt. You must decide whether the evidence is true. And if true, whether it shows the Defendant had a guilty state of mind.

Trial Tr. vol. II, 210 June 7, 2006.

Under Michigan law, flight is relevant to prove a defendant's consciousness of guilt. *Johnson v. Burke*, 903 F.2d 1056, 1062 (6th Cir. 1990) (internal citations omitted). Thus, in this case, the giving of a flight instruction did not violate Petitioner's due process rights or render the trial fundamentally unfair, particularly in light of the fact that the flight instruction directed jurors to make their own determinations as to whether Petitioner did in fact attempt to flee the scene and if so, what state of mind such flight evinced. *See Burton v. Renico*, 391 F.3d 764, 778 (6th Cir. 2004); *see also United States v. Carter*, 236 F.3d 777, 792 n.11 (6th Cir. 2001) (not an abuse of discretion for the district court to give a flight instruction, though defendant may have had a reason to flee from officers other than guilt of the criminal charge, where the instruction stated that evidence of flight may or may not indicate a defendant's guilty conscience or intent to avoid punishment).

With that, the Court concludes that Petitioner's claim is noncognizable in these proceedings and thus, he is not entitled to habeas relief on this claim.

### 4.    Claim IV– Ineffective Assistance Of Counsel

In his final habeas claim, Petitioner alleges that trial counsel was ineffective for failing to object when the trial court required the jury to determine whether Woods was an accomplice before applying the instruction on accomplice testimony, and for using a photograph of Alex Williams, who he believed looked like him, in questioning Woods, but then failed to move for its admission into evidence.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received the ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as

guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

As to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Strickland*, 466 U.S. at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy. *Id.* at 689.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Id.* at 686.

The Supreme Court has recently confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, --- U.S. ---, 131 S.Ct. at 788

14

(internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

### a. Jury Instructions

In addressing Petitioner's claim that trial counsel was ineffective for failing to object to the trial court requiring the jury to determine that Woods was an accomplice before giving the accomplice jury instruction, the Court of Appeals found that, because there was no error in the jury instructions as given, defense counsel was not ineffective for failing to object.

In discussing the jury instructions, the prosecutor, the defense counsel, and the trial judge all agreed that there was a dispute with respect as to whether Woods was an accomplice to Petitioner's offense. Trial Tr. vol. II, 165-72 June 7, 2006. The trial judge gave the disputed accomplice instruction, CJI2d 5.5, followed by the cautionary instruction for accomplice testimony, CJI2d 5.6. The trial judge noted that the use instruction for 5.5 said, "if there [was] a dispute as to the status of the witness as an accomplice, [that] fact should be submitted to the jury as a separate question for its deliberation." Trial Tr. vol. II, 170 June 7, 2006. The trial judge then suggested that the Verdict Form should "include a question as to whether the jurors find that she is an accomplice or not." *Id.* The prosecutor and the defense counsel agreed with the trial judge.

The Court of Appeals in addressing this issue stated:

> Defendant argues that submitting the question of Woods's status as an accomplice to the jury in this manner necessarily meant that the jury had to agree beyond a reasonable doubt that Woods was an accomplice before viewing her testimony with caution. However, when the court explained the verdict form to the jury, it never used the words "beyond a reasonable doubt." The court specifically stated that the answer to the question would determine how the jury should treat Woods's testimony based on the court's instructions, and it then summarized the

15

> instructions for accomplice testimony. Juries are presumed to follow the court's instructions. In addition, after explaining the verdict form, the court asked the jurors to raise their hands if they did not understand, and there were no hands raised. The trial court did not err in following the directions provided in the notes for the standard jury instructions, and there is no indication that the jury did not follow the instructions.
>
> Because there was no error in the jury instructions as given, defense counsel was not ineffective for failing to object to the instructions. "Trial counsel is not required to advocate a meritless position." In addition, defense counsel attacked Woods's credibility throughout the testimony by establishing that Woods accepted a plea agreement to testify against any codefendant and complete a drug rehabilitation program in exchange for dismissal of the charges against her. The evidence shows that trial counsel's performance did not fall below an objective standard of reasonableness, and defendant was not deprived of a fair trial.

*Clements*, 2007 WL 3085476, at *3 (citations omitted).

An attorney's failure to object to jury instructions is deficient only if the petitioner can establish that the instructions were inaccurate and that, therefore, an objection would have been sustained. *Daniels v. Lafler*, 501 F.3d 740, 743 (6th Cir. 2007) (citation omitted). "And, to demonstrate prejudice, a petitioner 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (quoting *Strickland*, 466 U.S. at 694); *see also Premo v. Moore*, --- U.S. ---, 131 S.Ct. 733, 739 (2011) (same).

Here, the trial court specifically instructed the jury as to Woods's deal with the prosecution in exchange for her testimony. Michigan courts presume that juries follow their instructions. *People v. Graves*, 458 Mich. 476, 581 N.W.2d 229, 234 (1998). Furthermore, in order to receive federal habeas relief from incorrect jury instructions, Petitioner must show that the instructions were so infirm as to render the entire trial fundamentally unfair. *Estelle*, 502 U.S. at 72. Here, the Michigan

appellate courts determined that the jury instructions were proper as a matter of state law, and thus Petitioner's counsel was not ineffective on that basis.

This Court concludes that the Court of Appeals's resolution of this issue was neither contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). Accordingly, Petitioner is not entitled to habeas relief on this claim.

### b. Photograph Evidence

Petitioner also argues that trial counsel's failure to submit a picture of Alex Williams into evidence denied him a fair trial. He claims that the admission of the photograph as an exhibit would have rendered a different result in his case.

Decisions as to what evidence to present and whether to call certain witnesses are presumed to be a matter of trial strategy, and the failure to call witnesses or present other evidence constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense. *See Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002); *Chegwidden v. Kapture*, 92 F.App'x 309, 311 (6th Cir. 2004). When making strategic decisions, counsel's conduct must be reasonable. *See Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000).

The Court of Appeals, in addressing, and rejecting, this claim stated:

> Next, defendant contends that counsel was ineffective for using a photograph of Alex Williams, who looked remarkably like defendant, in the questioning of Woods but failing to offer the photograph as an exhibit. During her testimony, Woods vehemently denied that she could have mistaken defendant for the man in the photograph. We note that defense counsel has a duty to consult with the defendant regarding important decisions, such as the overall defense strategy, but not regarding every tactical decision. Defense counsel's decision not to offer the photograph into

>  evidence after Woods testified that she was positive the man in the photograph was not the perpetrator was a minor tactical decision. Given Woods's testimony, we conclude that there is no reasonable probability that the admission of the photograph would have affected the outcome of the trial, and reversal is thus unwarranted.

*Clements*, 2007 WL 3085476, at *7 (citations omitted).

This Court agrees with the Court of Appeals's conclusion. A review of the record demonstrates that defense counsel adequately presented a defense theory, called witnesses, and effectively cross-examined those witnesses and explored inconsistencies in their testimony. Accordingly, the Court concludes that Petitioner is not entitled to habeas relief with respect to this claim.

## IV. CONCLUSION

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on the claims contained his Petition and that the Petition for a Writ of Habeas Corpus must be denied.

Before Petitioner may appeal the Court's decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed.R.App.P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the Court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that [] jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a court may not conduct a full merits

review but must limit its examination to a threshold inquiry into the underlying merit of the claims. *Id.* at 336-37.

Having conducted the requisite review, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right as to his habeas claims. A Certificate of Appealability is not warranted. The Court further concludes that Petitioner should not be granted an Application for Leave to Proceed *In Forma Pauperis* on appeal, as any appeal would be frivolous and cannot be taken in good faith. *See* Fed.R.App.P. 24(a).

Accordingly;

**IT IS ORDERED** that the Petition for a Writ of Habeas Corpus is **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the Court **DECLINES** to issue Petitioner a Certificate of Appealability. The Court also **DENIES** Petitioner an Application for Leave to Proceed *In Forma Pauperis* On Appeal should he decide to appeal this decision, because any appeal would be frivolous. *See* Fed.R.App.P. 24(a).

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

DATED: 10-26-11